UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

HAROLD CHARLES,

           Plaintiff,

 -v.-

                  9:07-CV-1274
NEW YORK STATE DEP'T OF ,        (DNH/GJD)
CORRECTIONAL SERVICES, *et al.*,

           Defendants.

APPEARANCES          OF COUNSEL

TROUTMAN, SANDERS LAW FIRM  Aaron Mendelsohn, Esq.
Attorneys for Plaintiff        Amanda R. Gaynor, Esq.

ATTORNEY GENERAL OF THE    Adrienne J. Kerwin
STATE OF NEW YORK        Asst. Attorney General
Attorney for defendants

GUSTAVE J. DI BIANCO, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

In this amended civil rights complaint, plaintiff alleges that defendants violated the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, the Rehabilitation Act (RA), 29 U.S.C. § 794, and the Eighth and Fourteenth Amendments of the United States Constitution when they refused to allow him to use his personal, medically prescribed, motorized wheelchair during his incarceration at Mohawk Correctional Facility (Mohawk). Amended Complaint (AC) (Dkt. No. 10).

Plaintiff seeks declaratory, injunctive and monetary relief.

Presently before the court is defendants' motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6). (Dkt. No. 11). Plaintiff has opposed defendants' motion. (Dkt. No. 14). For the following reasons, this court will recommend granting defendants' motion in part and denying the motion in part.

## DISCUSSION

**1.      Motion to Dismiss**

To survive a motion to dismiss, the plaintiff must provide "the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008)(quoting *inter alia ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff's factual allegations must be sufficient to give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Id.* (citing *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007)). When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (citations omitted).

**2.      Facts**

Plaintiff is a paraplegic inmate, who also has an injury to his left wrist, a "Stage IV sacral decubitus ulcer on his coccyx," and severe ulcers on his left hip. AC ¶ 19. Plaintiff states that because of his disabilities, he is dependent on a motorized

wheelchair and must frequently shift his weight to relieve pressure from sores on his lower body. *Id.*  Plaintiff alleges that this condition causes him considerable pain. *Id.* Plaintiff states that he personally owns a specially constructed, motorized wheelchair that was prescribed for him in 2004 by his physician, prior to plaintiff's incarceration. AC ¶ 21.  The wheelchair was prescribed for plaintiff based both on his inability to walk as well as his other severe conditions. *Id.*  These conditions prevent plaintiff from operating a manual wheelchair without "extreme discomfort and pain." *Id.* Plaintiff states that his motorized wheelchair also contains special lumbar cushioning to support his spine and enable him to shift his weight to relieve the pressure from his decubitus ulcer. *Id.*

Plaintiff states that when he was first incarcerated in the New York State Department of Corrections (DOCS) in April of 2004, he brought his motorized wheelchair with him and was allowed to use it from 2004 until 2006, while he was incarcerated at Rikers Island Correctional Facility. AC ¶¶ 22-23.  In May of 2006, plaintiff was transferred to Mohawk and was forced to leave his wheelchair behind. AC ¶ 23.  Plaintiff states that he has told defendants that he is experiencing a great deal of pain because he is unable to operate a manual wheelchair, and the defendants have refused to provide plaintiff with "an accommodation" for his disability. AC ¶¶ 27-28.

In April of 2007, plaintiff requested permission to bring his motorized wheelchair to Mohawk. AC ¶ 29. Defendants Dr. Berdick and Richard Harding, the Deputy Superintendent of Programs at Mohawk acknowledged that plaintiff needed a

3

wheelchair, but instead of allowing him to obtain his motorized chair, they told him that someone at the facility would assist him if he could not operate the manual wheelchair. *Id.* Plaintiff claims that in April of 2007, he "alerted" defendants Berdick, Sharma, Harding, Payant, Rabideau, Wright, Raymond, and the Mohawk Reasonable Accommodation Committee that plaintiff wished to obtain his wheelchair, but these individuals and the Committee notified plaintiff that he would not be allowed to do so. AC ¶ 30.

Plaintiff states that he has been provided with a "standard" wheelchair in lieu of allowing him to bring his own wheelchair to Mohawk. AC ¶ 32. Plaintiff states that the wheelchair must be operated manually, and he cannot do so because of his injured wrist. *Id.* Additionally, it is difficult for plaintiff to maneuver his body and to adjust and reposition his body in the standard wheelchair. *Id.* He must perform these movements in order to relieve the pressure from his sacral decubitus ulcer and bedsores. *Id.* Because he has been unable to obtain his motorized wheelchair, and the standard wheelchair causes him extreme pain, he has been unable to participate in many prison programs, and he has suffered pain on many occasions. AC ¶ 33.

Plaintiff states that Mohawk personnel, including defendants Payant, Harding, Rabideau, Antonsen, Sharma, and Berdick, have failed to reasonably accommodate plaintiff's disability. AC ¶ 37. Plaintiff states that on many occasions, he has been unable to go to the cafeteria, the visiting room, the commissary, the general library, and the law library in the manual wheelchair. *Id.* Plaintiff alleges that his requests for assistance in pushing the manual wheelchair have been denied, and thus, he had been

4

denied access to programs and facilities that are available to non-disabled inmates.

Plaintiff states that since April of 2007, he has filed multiple complaints with defendants Annucci, Wright, Diaz, Raymond, Payant, Harding, Rabideau, Sharma, and Berdick regarding his pain and lack of medical treatment. AC ¶ 38.  In May of 2007, defendant Rabideau denied plaintiff the authorization to use his medically prescribed wheelchair. AC ¶ 39.  Plaintiff states that in a May 2007 memorandum, defendant Rabideau "misled" other officials by informing them that "personal motorized wheelchairs were not allowed at Mohawk." AC ¶ 35.  Plaintiff states, however, that other inmates have been allowed to use motorized wheelchairs. *Id.*  In June of 2007, plaintiff sent a "reasonable accommodation" request to defendant Harding, who instructed facility personnel to conduct a hearing. AC ¶ 40.  Plaintiff states that he believes that defendants and other Mohawk personnel held a reasonable accommodation hearing regarding plaintiff's requests, but denied his request for the motorized wheelchair, despite plaintiff's complaints of "extreme pain and suffering." AC ¶ 41.

The amended complaint then discusses letters and complaints that plaintiff states he has written to various defendants. AC ¶¶ 42-47.  Plaintiff states that between August and November 2007, he wrote letters to, or received letters from, defendants Payant, Annucci, Antonsen, Sharma, Raymond, and Wright. *Id.*  Plaintiff states that on August 31, 2007, defendant Payant wrote to plaintiff, advising him to tell his doctor about the pain plaintiff was experiencing from using the manual wheelchair. AC ¶ 42. On August 27, 2007, defendant Annucci wrote to plaintiff, telling him that he had

been assigned an assistant to push the manual wheelchair, however, on September 26, 2007, defendant Annucci told plaintiff that his complaints were "outside of the jurisdiction of [Annucci's] office." AC ¶ 43. On October 4, 2007, defendant Annucci told plaintiff that his "needs were being met." *Id.*

On September 20, 2007, defendant Antonsen wrote to plaintiff stating that she had investigated plaintiff's complaint, and he should discuss his problems with his doctor "because the nursing staff denied any wrongdoing." AC ¶ 44. Although plaintiff states that he asked for reconsideration of Antonsen's findings, she did not respond. *Id.* Plaintiff states that in October and November, he wrote to defendant Sharma, who responded by telling plaintiff that he had abused his privileges and "recommended that he direct his concerns to his healthcare provider." AC ¶ 45. On October 1, 2007, defendant Raymond wrote to plaintiff telling him that Raymond could not help. AC ¶ 46. In September of 2007, plaintiff wrote to defendant Wright, however, defendant Diaz responded to the letter, stating that defendant Wright, the facility physician, and the medical director had investigated the matter and determined that the motorized wheelchair was not a necessity. AC ¶ 47.

Plaintiff claims that he was barred from participation in programs because of animus or ill will toward his disabilities. AC ¶ 49. Plaintiff claims that the defendants displayed marked hostility and medically inappropriate behavior toward plaintiff in his efforts to obtain and use his motorized wheelchair. AC ¶ 53. Plaintiff also claims that the defendants failed to properly investigate his allegations, despite their awareness of the constitutional violations.

Plaintiff's amended complaint contains two causes of action. The first cause of action is under the ADA and the RA against defendants DOCS; Payant;[1] Rabideau;[2] Harding;[3] Wright;[4] Sharma;[5] Antonsen;[6] Anthony Annucci;[7] Diaz;[8] and Raymond.[9] AC ¶¶ 56-61. Plaintiff's second cause of action alleges that defendants Payant; Rabideau; Harding; Wright; Sharma; Antonsen; Annucci; Diaz; and Raymond violated plaintiff's right to constitutionally adequate medical care by being deliberately indifferent to plaintiff's serious medical needs.[10] AC ¶¶ 62-64.

### 3. **ADA and Rehabilitation Act**

The ADA and section 504 of the Rehabilitation Act are applicable to inmates in state correctional facilities. *Allah v. Goord*, 405 F. Supp. 2d 265, 274 (S.D.N.Y. 2005). In order to state a claim under section 504 of the Rehabilitation Act, the

---

[1] Leo E. Payant, Superintendent of Mohawk Correctional Facility

[2] Ann Rabideau, Deputy Superintendent of Health at Mohawk.

[3] Richard H. Harding, Deputy Superintendent for Programs at Mohawk.

[4] Lester Wright, Deputy Commissioner and Chief Medical Officer of DOCS.

[5] Yogemdra D. Sharma, Facility Health Services Director.

[6] Judi Antonsen, Director of Nursing at Mohawk.

[7] Anthony Annucci, Deputy Commissioner and Counsel of DOCS.

[8] Pedro Diaz, Regional Health Services Administrator of DOCS.

[9] Robert Raymond, ADA Coordinator of DOCS.

[10] The court notes that neither Cause of Action mentions defendant Dr. Berdick. He is apparently a physician at Mohawk, although his first name is unknown. He is mentioned in the amended complaint along with Dr. Sharma. *See e.g.* AC ¶¶ 34, 36-38. Defense counsel has clearly appeared on Dr. Berdick's behalf.

plaintiff must show that he (1) has a disability for purposes of the Act; (2) that he was "otherwise qualified" for a benefit that he was denied; (3) that he was denied the benefit solely because of his disability; and (4) that the benefit is part of a program or activity that receives federal financial assistance. *Romano v. SLS Residential, Inc*. 246 F.R.D. 432, 440 (S.D.N.Y. 2007).

Under the ADA, the inmate must establish that he (1) is a qualified individual with a disability; (2) is being excluded from participation in, or being denied benefits of some service, program or activity by reason of his or her disability; and (3) the entity providing the service is a public entity. *Allah v. Goord*, 405 F. Supp. 2d at 274. The standards for determining whether plaintiff states a claim under the ADA and the RA are almost identical. The only difference in the statutes is that the RA applies to entities receiving federal financial assistance, and Title II of the ADA applies to all public entities. *Messier v. Southbury Training Sch*., 562 F. Supp. 2d 294, 320 & n.13 (D. Conn. 2008).

In this case, defendants concede that the statutes apply. However, defendants' first argument is that the individual defendants must be dismissed from the ADA and RA claims because individuals may not be sued under these statutes. Plaintiff argues that the individuals are being sued in their "official capacities" and thus, may be maintained in the case as named. It appears that both sides are making the same argument, but the court will clarify the issue.

The State of New York is a "public entity" within the meaning of the ADA. 42 U.S.C. § 12131(1)(A). Naming a state defendant in his or her "official capacity" is

8

tantamount to naming the State. *Henrietta D. v. Bloomberg*, 331 F.3d 261, 288 (2d Cir. 2003), *cert. denied*, 541 U.S. 936 (2004). In *Henrietta D.*, the Second Circuit held that a valid ADA claim may be stated against a state official in his or her official capacity. *Id.* at 288-89. The ADA does **not**, however, provide for "individual capacity" suits against state officials. *Garcia v. S.U.N.Y. Health Science Center of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001).

In this case, in plaintiff's response to defendants' motion to dismiss the "individual capacity" suit against the defendants, plaintiff spends a great deal of the memorandum citing *Henrietta* and arguing that the "individuals" may be sued in their "official capacity." Plaintiff's argument is correct, but defendants are arguing that to the extent that plaintiff is suing the defendants in their "individual capacity," not as individuals in their "official capacity," the ADA and RA claims may be dismissed. Defendants' argument is also correct. Thus, both sides are correct, and it appears that plaintiff is only suing the individual officers in their "official capacity." As such, the ADA and RA claims may continue. To the extent that the amended complaint could be interpreted as suing these DOCS officials in their "individual capacity," any ADA or RA claims should be dismissed. However, the ADA and RA claims may proceed as against the State and the individuals in their "official capacity."

4.    **Personal Involvement**

In contrast, plaintiff also has a 42 U.S.C. § 1983 claim against the defendants in their "individual capacities" for Eighth and Fourteenth Amendment violations regarding plaintiff's medical care. The state itself cannot be sued under section 1983.

9

*Komlosi v. New York State OMRDD*, 64 F.3d 810, 815 (2d Cir. 1995)(citing *Will v. Michigan Department of Police*, 491 U.S. 58, 71 (1989)).  Thus, the individual defendants may only be sued for money damages under section 1983 in their "individual capacities." *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (discussing the distinction between "individual" or "personal" capacity actions and "official" capacity actions).

However, in order to hold an individual liable for damages in a section 1983 action, plaintiff must allege that the individual was "personally involved" in the constitutional violation of which he complains. *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006); *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986).  In *Williams*, the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation. 781 F.2d at 323-24.  A supervisory official is said to have been personally involved if that official directly participated in the infraction. *Id*.  Personal involvement may be shown if, after learning of a violation through a report or appeal, the supervisory official failed to remedy the wrong. *Id*. Personal involvement may exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id*. Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id*.

In *Farrell*, however, the Second Circuit specifically stated that personal involvement is a generally a question of fact. 449 F.3d at 484.  As stated above, in a motion to dismiss, all the facts alleged in the complaint are accepted as true. *Erickson*

*v. Pardus*, 127 S. Ct. at 2200.  The plaintiff must satisfy a "flexible plausibility standard," and once a plaintiff has stated his claim adequately, then it may be supported by any set of facts that are consistent with the allegations in the complaint. *Bell Atlantic v. Twombly*, 550 U.S. at 563. Thus the court will consider whether plaintiff has adequately stated the personal involvement of the individual defendants.

### A.     Defendants Annucci; Raymond; Diaz; Wright; Payant; and Antonsen

Defendants argue that plaintiff has not alleged sufficient personal responsibility of these five defendants because plaintiff claims only that he wrote them various letters and received "some brief letters in response." Def. Mem. at 3. (Dkt. No. 11). The issue of personal involvement relates only to the section 1983 claim that defendants were deliberately indifferent to plaintiff's serious medical needs.[11] Generally, the failure of a supervisory official to respond to a letter of complaint is insufficient to create personal responsibility. *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997); *Smart v. Goord*, 441 F. Supp. 2d 631, 642-643 (S.D.N.Y. 2006).  *Sealey* does not, however, stand for the proposition that a letter or letters to a supervisory official is insufficient as a matter of law to create personal responsibility.  The court in *Sealey* was considering a motion for ***summary judgment*** and had the opportunity to see the content and character of the letters that were sent to the supervisor. *Id.*

Additionally, simply affirming the denial of a grievance is generally insufficient to confer personal responsibility on a defendant. *Warren v. Goord*, 476 F. Supp. 2d

---

[11] This is true because the ADA claim is against defendants in their official capacities, not in their individual capacities.

11

407, 413 (S.D.N.Y. 2007)(finding no personal involvement where plaintiff alleged only that the defendant denied his grievance). However, courts in this circuit have held that when a supervisory official *receives and acts on* a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint, a sufficient claim for personal involvement has been stated. *Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002)(citing cases).

In *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995), the court found that the plaintiff's statements regarding a letter of complaint were insufficient to raise an issue of fact, however, the court made this finding on *summary judgment* and after stating that because contents of the letter were not specified, the court could not tell whether it would have prompted the superior officer to investigate. *Id.* In *McKenna v. Wright*, 386 F.3d 432, 437-38 (2d Cir. 2004), the court held that when allegations of denied medical care come to the attention of the supervisor of a medical program, his adjudicating role in denying a grievance cannot insulate him from responsibility for allowing the continuation of allegedly unlawful policies within his responsibility.

Basically, the cases make clear that the determination of personal involvement based on a letter of complaint to a supervisor or based on a grievance handled by a supervisory official often depends upon the contents of the letter and whether the supervisor referred the letter to a subordinate officer or whether the supervisory official investigated and decided the issue him or herself. *See also Rivera v. Pataki*, 04 Civ. 1286, 2005 U.S. Dist. LEXIS 2747, *79-81 (S.D.N.Y. Feb. 4, 2005)(discussing situations in which personal involvement may be found based on letters of complaint).

Defendants in this case cite *Rivera* for the proposition that writing to a supervisory official does not create personal involvement, however, *Rivera* also stands for the proposition that the contents of the letter and the action of the supervisor may be the determining factor in this analysis. *Id.*

Finally, although the motion in *Rivera* was initially one to dismiss, the parties submitted exhibits, and the court considered the motion as one for summary judgment. *Id.* at *1-2. The court was given the opportunity to see the letters that plaintiff wrote to the supervisory officials and make the appropriate determination. *Id.* at * 80. Thus, with this standard in mind, the court may turn to the allegations in this amended complaint to determine whether plaintiff has stated a claim as against the supervisory officials.

The amended complaint states that plaintiff wrote to defendant Annucci, and this defendant responded by stating that plaintiff had been "assigned an assistant to push his manual chair because of his disabilities." AC ¶ 43. Although plaintiff states that one letter from defendant Annucci informed plaintiff that plaintiff's complaints were "outside his jurisdiction," plaintiff claims that in another letter defendant Annucci told plaintiff that "his needs were being met." *Id.* Based on the fact that the court does not know the contents of the letters, this court cannot say that plaintiff has failed to show personal involvement of this defendant. The amended complaint states that this defendant actually investigated the complaint and responded based on that investigation. Without more information, this court cannot recommend dismissal against defendant Annucci on that basis.

13

The claim against defendant Raymond also states that she wrote to plaintiff, telling him that she "had investigated his complaint." AC ¶ 44. Plaintiff also states that he wrote to defendant Raymond in September of 2007, and she responded by stating that she "could not help [plaintiff]." AC ¶ 46. Plaintiff claims that he has filed "multiple complaints" with defendants regarding his continuing pain, suffering and inadequate medical treatment. AC ¶ 38. Plaintiff alleges that in September of 2007, plaintiff sent several complaints to defendant Antonsen, regarding the nursing staff refusing to help plaintiff move his wheelchair and complaining about the pain he was experiencing. AC ¶ 44. Plaintiff claims that defendant Antonsen responded by stating that *she* had investigated the issue, and that plaintiff should discuss the problem with his doctor because "the nursing staff denied any wrongdoing." *Id.* The court makes no findings regarding the merits of plaintiff's allegations, however, at this stage of the proceedings, the court finds that it cannot recommend dismissal of the constitutional claims as against defendants Annucci, Raymond, or Antonsen based upon a lack of personal responsibility.

Plaintiff claims that in response to a letter to defendant Wright, plaintiff received a letter from defendant Diaz. AC ¶ 47. Plaintiff claims that the letter from defendant Diaz "stated that defendant Wright, along with the facility physician and medical director, had investigated the matter and had determined that his wheelchair was not a necessity." *Id.* In their argument, defendants mix personal involvement with deliberate indifference in stating that a medical judgment regarding necessity of the wheelchair does not constitute deliberate indifference. Def. Mem. at 5. The plaintiff,

14

however, alleged that the letter from Diaz, specifically states that defendant Wright and others investigated the plaintiff's complaint. Regardless of whether the ultimate decision results in liability for deliberate indifference, the allegation that defendant Wright was personally involved in the investigation is sufficient at this stage to allege personal involvement by both defendants Diaz and Wright.

Plaintiff states that he filed grievances regarding the denial of his wheelchair, and the grievances were denied by defendants, including defendant Payant. AC ¶ 31. As stated above, without the ability to see what the extent of the supervisory official's involvement was in the investigation or denial of the grievance, the court cannot make a proper decision with respect to personal involvement. In a footnote, plaintiff argues that the pleadings sufficiently show that defendant Payant was aware of the discriminatory treatment because of the grievances filed by plaintiff. Pl. Mem. at 12 n.5. (Dkt. No. 14). In the same footnote, plaintiff states that, at a later point in the litigation, a review of those grievances and complaints will illustrate defendant Payant's awareness of plaintiff's complaints and his actions regarding those complaints. *Id.* On a motion to dismiss, the court must accept the statements made by plaintiff in the complaint as true. *Erickson v. Pardus, supra*. Thus, the court will not recommend dismissing the action against defendant Payant for failure to allege the requisite personal involvement.

### B. Defendant Rabideau

Defendant Rabideau is the Deputy Superintendent of Health at Mohawk Correctional Facility. Plaintiff claims that defendant Rabideau answered plaintiff's

letter by stating that Mohawk did not authorize the use of motorized wheelchairs for "safety and security reasons." AC ¶ 55.  Plaintiff also alleges that in May of 2007 defendant Rabideau specifically denied plaintiff the use of his wheelchair. AC ¶ 39.  Defendants argue that this involvement is insufficient.  This court disagrees.  Based on the facts as alleged by plaintiff, it appears that defendant Rabideau is expressing a "policy" that does not allow motorized wheelchairs under any circumstances since the letter refers to "safety and security."  Plaintiff also claims that other individuals have been allowed to use motorized wheelchairs at Mohawk. AC ¶ 35.  If this ultimately is found to be an unconstitutional policy,[12] defendant Rabideau's endorsement of that policy is sufficient personal involvement in plaintiff's claim. *Wright, supra* (discussing personal involvement based on the supervisor allowing a policy under which constitutional violations are allowed to occur).

### C.  Defendant Harding

Defendant Harding is the Superintendent of Programs at Mohawk.  Plaintiff claims that he sent letters of complaint as well as a reasonable accommodation request to defendant Harding. AC ¶¶ 34, 40.  It is unclear what the "complaint" letters contained, and plaintiff alleges that in response to the "reasonable accommodation" request, defendant Harding merely instructed SCC Hulihan to conduct a hearing regarding plaintiff's request.  The fact that defendant Harding ordered a subordinate to hold a hearing regarding reasonable accommodation, in itself would be insufficient to

---

[12] This court must emphasize again that it makes no findings regarding the ultimate merits of plaintiff's complaint, merely, that plaintiff has alleged sufficient personal involvement in his complaint.

allege the requisite personal involvement, but since plaintiff claims that there were other letters of complaint, and the court cannot determine what was in those letters or whether they would have alerted defendant Harding to the need for some sort of action, this court cannot recommend dismissal based on lack of personal involvement.

### E.  Defendants Sharma and Berdick

Defendant Sharma is the Facility Health Services Director at Mohawk.  Dr. Berdick is a physician at Mohawk.  Plaintiff states that defendant Sharma personally denied plaintiff's wheelchair request and further refused to adequately respond to plaintiff's complaints. Pl. Mem. at 15.  *See e.g.* AC ¶ 36.  Plaintiff states that Dr. Sharma and defendant Berdick specifically denied plaintiff the permission to bring his wheelchair to the facility.  Thus, plaintiff has stated sufficient personal involvement to survive a motion to dismiss.  A review of the defendants' arguments, however, show that instead of arguing that they were not personally involved in plaintiff's claims, they argue that they were not "deliberately indifferent" to his serious medical needs and that the amended complaint should be dismissed on this basis.[13]  Def. Mem. at 4-5.

Again, defendants are confusing lack of personal involvement with the ultimate question of whether someone who was personally involved with plaintiff should be held liable for deliberate indifference.  In order to state an Eighth Amendment claim

---

[13] This is true, notwithstanding the fact that this argument is contained in a section of defendants' memorandum of law that is dedicated to "personal involvement."  Defendants' memorandum of law contains two arguments, one relates to the ADA and RA and the second to "personal involvement."  It is unclear where the argument on the merits fits into a lack of personal involvement, however, this court has addressed the Eighth and Fourteenth Amendment issue in any event.

based on constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). There are two elements to the deliberate indifference standard. *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003). The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind. *Id.* at 184 (citing *inter alia Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

It is also true that disagreement with prescribed treatment does not rise to the level of a constitutional claim. *Sonds v. St. Barnabas Hosp. Correctional Health Services,* 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001). Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates. *Id.* (citations omitted). An inmate does not have the right to treatment of his choice. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1086). The fact that plaintiff might have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation. *Id.*

While it may be true in the end, that the two doctors in this case, made a medical decision that did not amount to deliberate indifference, this court cannot make that determination in this case based on the pleadings alone. Thus, this court finds that defendants' motion to dismiss based on lack of personal involvement should be denied.

**5.     Qualified Immunity**

Defendants also allege that they are entitled to qualified immunity. Although defendants do not specify the claim to which this immunity would apply, it is clear that this defense would apply *only* to the section 1983 claim because it is a "personal" defense that may only be asserted by the official who is being sued in his "individual capacity." *See Kentucky v. Graham*, 473 U.S. at 166-67. The first step in determining whether an defendant is entitle to qualified immunity is to determine whether the defendant violated plaintiff's constitutional rights, and if so, whether that right was clearly established at the time. *Iqbal v. Hasty*, 490 F.3d 143, 152 (2d Cir. 2007). A defendant will be entitled to qualified immunity if his or her actions did not violate clearly established law or if it was "objectively reasonable" for the defendant to believe that his or her actions did not violate clearly established law. *Id.* (citing *Johnson v. Newburgh Enlarged School Dist.*, 239 F.3d 246, 250 (2d Cir. 2001)).

Although a defendant may assert the defense of qualified immunity in a motion to dismiss, the Second Circuit has held that it is very difficult for such a defense to succeed at the pleading stage. *McKenna v. Wright*, 386 F.3d at 436-37. The defense must be based on facts appearing on the face of the complaint. *Bezman v. Whitman*, 523 F.3d 119, 125 (2d Cir. 2008). Defendants in this case have not really made an argument regarding the Eighth Amendment claim, and instead focused their motion to dismiss on the personal involvement issue. Since this court has determined that plaintiff has stated sufficient personal involvement to survive a motion to dismiss, it is impossible to determine without more, whether the defendants would be entitled to

19

qualified immunity.  Thus, this court will not recommend dismissal of the section 1983 claims based on the defense of qualified immunity at this time.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 11) be **GRANTED** only to the extent that the complaint can be read to allege an ADA or RA claim in defendants' "individual capacities," and it is

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 11) be **DENIED IN ALL OTHER RESPECTS**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: March 9, 2009

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge